IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CANOPY FINANCIAL, INC., | ) Case No. 09-44943 |
| | ) |
| Debtor. | ) Hon. Eugene R. Wedoff |
| | ) |

**SECOND MODIFIED ORDER (A) SCHEDULING AN AUCTION,
SALE HEARING, AND OBJECTION DEADLINES; (B) APPROVING BIDDING
PROCEDURES; AND (C) APPROVING NOTICE OF THE SALE HEARING**

Upon the motion (the "*Sale Motion*")[1] of Canopy Financial, Inc., the above captioned debtor (the "*Debtor*"), seeking entry of an Order (a) scheduling an auction, hearing, and objection deadlines for the sale of assets pursuant to 11 U.S.C. § 363; (b) approving the bidding procedures related thereto (the "Bidding Procedures"); and (c) approving the form and manner of the notice thereof; the Court having reviewed the Sale Motion; and the motion (the "*Modification Motion*") of Chapter 7 Trustee Gus A. Paloian (the "*Trustee*"), not personally or individually but solely on behalf of the bankruptcy estate of the Debtor, seeking entry of an Order (a) authorizing the Trustee to sell substantially all of the assets of the Debtor and assume and assign certain executory contracts in conjunction with such sale and (b) modifying this Court's prior Order (A) Scheduling An Auction, Sale Hearing, And Objection Deadlines; (B) Approving Bidding Procedures; And (C) Approving Notice Of The Sale Hearing (the "*Original Procedures Order*"); the Court having heard the statements of counsel in support of the relief requested therein at a hearing on the Sale Motion on December 23, 2009 and on the Modification Motion on January 20, 2010; the Court having previously entered the Original Procedures Order (Dkt. No. 110) and

---

[1] Capitalized terms not defined herein shall have the meanings given to them in the Sale Motion and the Modification Order.

an order approving the Modification Motion (the "*Modified Procedures Order*") (Dkt. No. 117); the Trustee determining that a continuance of the Auction and Sale Hearing was in the best interest of Debtor's estate and therefore adjourning the auction scheduled for January 26, 2010 and the Sale Hearing scheduled for January 27, 2010; the Court finding that: (i) it has jurisdiction over the matters raised in the Sale Motion and the Modification Motion pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O); (iii) the relief requested in the Sale Motion and the Modification Motion is warranted and is in the best interests of the Debtor, its estate, and its creditors; and (iv) notice of the Sale Motion, the Modification Motion, and the Modified Procedures Order was sufficient under the circumstances; and the Court being fully advised in the premises:

IT IS HEREBY FOUND AND DETERMINED THAT:

A. The Trustee has articulated good and sufficient reasons for (1) granting him authority, subject to a final hearing, to sell the Assets and assume and assign the Designated Contracts, and (2) the modifications to the Original Procedures Order and the Bidding Procedures as set forth herein.

B. The Bidding Procedures (as defined below) are reasonable and appropriate to maximize the return on the Assets.

C. The prior notice of the Sale Hearing and the Auction, including Canopy's prior service of the Original Procedures Order and the Auction Notice by regular mail on December 23, 2009, the publication of abbreviated notice of the Auction in the *Chicago Tribune* on December 31, 2009, and the Trustee's service of the Modification Motion and the Modified Procedures Order, is adequate and reasonable and in compliance with the requirements of Bankruptcy Rule 2002.

CH1 11884510.3

D.    As demonstrated by the representations of counsel made on the record at the hearing on January 27, 2010, Trustee's determination that a continuance of the Auction and the Sale Hearing, and modification of the Bidding Procedures in conjunction with a sale of Debtor's assets (the "*Assets*"), will provide the highest or otherwise best offer for Debtor's Assets, constitutes a reasonable exercise of the discretion afforded to Trustee under the Bankruptcy Code and applicable law.

NOW, THEREFORE, IT IS ORDERED that:

1.    The bidding procedures set forth in the Modified Procedures Order are modified and amended as set forth below, and are hereby approved in their entirety (collectively, the "*Bidding Procedures*"):

    a.    <u>General</u>: Any person wishing to bid for the purchase of the Assets (a "*Bidder*") other than the Proposed Purchaser must (i) become a "Qualified Bidder"; and (ii) submit a "Qualified Bid." A "Transaction" shall mean the closing of a transaction(s) by which the Assets have been transferred of to one or more Qualified Bidders pursuant to these Bidding Procedures.

    b.    <u>Qualified Bidder</u>: To become a Qualified Bidder, a person must submit (i) an executed non-disclosure agreement in form and substance satisfactory to the Trustee and (ii) certain financial statements and other financial information as may be required by the Trustee by the Bid Deadline (as defined below).

    c.    <u>Due Diligence</u>: Only Qualified Bidders may conduct due diligence. The Trustee may afford any Qualified Bidder reasonable time and opportunity to conduct reasonable due diligence under the circumstances. The Trustee will designate a representative to coordinate all reasonable requests for additional information and due diligence access from the Qualified Bidders who shall have access to the due diligence materials. The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline. The Trustee is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with due diligence.

    d.    <u>Bid Protection</u>. To the extent the Trustee has designated a Stalking Horse Bidder pursuant to paragraph 7 below, the cash component of any Qualified Bid must exceed the cash component of the Stalking Horse Bidder's offer by at least $150,000. At auction, there shall be a minimum

3

bid increment in the cash component for all bids made by Qualified Bidders, including any Stalking Horse Bidder of at least $150,000 for the initial bid and $150,000 thereafter.

    e.    Qualified Bid: A bid submitted by a Qualified Bidder will be a Qualified Bid if it meets all of the following bid requirements: (i) includes the documents described in subparagraphs (b)(i)-(iii) above; (ii) it complies in all material respects with the Bidding Procedures; (iii) the Qualified Bidder's offer is irrevocable until the earlier of (A) two (2) business days after the closing of a Transaction(s) by which the all of the Assets that were the subject of such bid have been transferred of to one or more Qualified Bidders pursuant to these Bidding Procedures, and (B) thirty (30) days after the entry of an order of the Court approving the Transaction for the transfer of all of the Assets that were the subject of such Qualified Bid; (iv) if the Trustee has designated a Stalking Horse Bidder pursuant to paragraph 7 below, it includes, (v) if the Qualified Bidder proposes a transaction or transactions comprised of the Assets, an executed purchase agreement marked to show modifications to the any Stalking Horse APA (as defined below), or (vi) if the Qualified Bidder proposes an alternative transaction, an executed purchase agreement marked to show modifications to the Stalking Horse APA ; (vii) if necessary, it includes (A) the Qualified Bidder's draft filings to be submitted in accordance with the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR"), and a representation by such Qualified Bidder of its ability upon no more than five (5) days notice from the Debtor to immediately proceed to file any necessary notification under Section 7A of the Clayton Act and promptly complete the processes necessary to comply with HSR with respect to a Qualified Bid, if such approval is required for the Qualified Bidder to consummate the proposed Transaction, (B) a description of any additional anticipated regulatory approvals required prior to the close the Transaction, the anticipated time frame for obtaining the same and any anticipated impediments for obtaining the same, and (C) the Qualified Bidder's representation that it is prepared to immediately initiate all actions necessary to obtain all other applicable approvals for such alternative transaction; (viii) it includes a good faith deposit (the "*Good Faith Deposit*") in the form of a certified check, wire transfer or such other form as is acceptable to the Trustee payable to the order of the Trustee (or such other party as the Trustee may determine) in an amount equal to five percent (5%) of the bid value, in terms of cash and assumed debt; (ix) as of the day immediately prior to the commencement of the Auction, it is not contingent on obtaining financing or the outcome of unperformed due diligence by the Qualified Bidder or the amendment or renegotiation of a contract or lease to be assumed as part of such bid; (x) it demonstrates adequate assurance of future performance under any executory contracts to be assumed pursuant to such bid; (xi) it includes written evidence of a commitment for financing or other evidence of the ability to consummate the contemplated

transaction satisfactory to the Trustee with appropriate contact information for such financing sources; and (xii) it does not contain any provision for the payment of a termination fee, expense reimbursement or similar fee to such Qualified Bidder.

f.  Bid Deadline: A Qualified Bidder who desires to make a Qualified Bid shall deliver a written copy of the Qualified Bid to the Debtor no later than 4:00 p.m. Central Time) on **February 1, 2010** (the "*Bid Deadline*"). The Trustee may extend the Bid Deadline if appropriate in his reasonable business judgment.

g.  Auction: The Trustee shall conduct an auction (the "*Auction*") with respect to the Assets. The Auction shall begin on **February 2, 2010** at the offices of Jenner & Block LLP, 353 N. Clark St., Chicago, IL, 60654, beginning at 10:00 a.m. (Central Time) and continuing thereafter until completed, with minimum bid increase increments of at least $150,000 for the initial bid and $150,000 thereafter for all Qualified Bidders. The Trustee may (x) adjourn or continue the Auction as is appropriate in the Trustee's reasonable business judgment ~~or (y) announce at the Auction additional rules for bidding and other procedures that are reasonable under the circumstances for conducting the Auction, so long as such rules are not inconsistent with the provisions of the Modified Procedures Order, this Order, any order of the Court entered in connection herewith, or the Bankruptcy Code~~. Upon the conclusion of the Auction, the Trustee shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the transaction process, including, without limitation, the maximization of the value of the Debtor's estate (including the value of any Assets not transferred pursuant to any Successful Bid(s)), whether such Qualified Bid provides for financing the operations of the Debtor between the Sale Hearing and the close of such transaction(s), and factors affecting the speed and certainty of consummating the Transaction(s), and (ii) as soon as practicable identify the highest or otherwise best bid(s) for some or all of the Assets that would maximize the overall value of the Debtor's estate after payment of, among other things, the Break-Up Fee, if required (each a "*Successful Bid*" and the entity or entities submitting such Successful Bid, each a "*Successful Bidder*") and advise the Qualified Bidders of such determination. In addition, the Trustee, will determine which Qualified Bid, if any, is the next highest or otherwise best Qualified Bid and designate such Qualified Bid as a "*Backup Bid*" in the event the Successful Bidder(s) fail to consummate the contemplated transaction(s). A Qualified Bidder that submitted a Qualified Bid that is designated a Backup Bid is a "*Backup Bidder*". The Backup Bid shall remain open and binding until the earlier of (a) two (2) business days after a Transaction closes; or (b) thirty (30) days after the Sale Hearing.

CH1 11884510.3

h.  <u>The Sale Hearing</u>. The Sale Hearing will be held before the Honorable Eugene R. Wedoff on **February 3, 2010, at 10:00 a.m. (Central Time)** at the United States Bankruptcy Court for the Northern District of Illinois. The Trustee may adjourn the Sale Hearing from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date. At the Sale Hearing, the Trustee shall present the results of the Auction to the Court and seek approval for the Successful Bid(s) and the Backup Bid.

i.  <u>Return of Good Faith Deposit and Earnest Money Deposit</u>: Good Faith Deposits of all Qualified Bidders and the earnest money deposit of the Proposed Purchaser (the "*Earnest Money Deposit*") shall be held in an escrow account(s). The Trustee shall hold the Good Faith Deposits of all Qualified Bidders and the Earnest Money Deposit of the Proposed Purchaser until the earlier of (i) two (2) business days after a Transaction closes; or (ii) twelve (12) days after the Sale Hearing; *provided, however*, that in the case of the Successful Bidder(s) and the Backup Bidder, the Trustee shall hold the Earnest Money Deposit or the Good Faith Deposit, as applicable, until the earlier of (A) two (2) business days after a Transaction closes; or (B) thirty (30) days after the Sale Hearing. If a Successful Bidder successfully consummates an approved Transaction, such Successful Bidder's Good Faith Deposit or Earnest Money Deposit, as applicable, shall be applied to the purchase price in such Transaction. If a Successful Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Trustee shall be entitled to (x) retain the Good Faith Deposit or Earnest Money Deposit, as applicable, as part of its damages resulting from the breach or failure to perform by the Successful Bidder, and (y) seek all available damages from such Successful Bidder occurring as a result of such Successful Bidder's failure to perform.

2.  On or before **February 4, 2010**, the Trustee shall (a) serve all counterparties to Designated Contracts with the Sale Motion and the Modification Motion; and (b) file a notice of cure amounts (the "*Cure Notice*") listing the "cure" amounts owing on each of the Designated Contracts at the time of filing of the Cure Notice, according to Debtor's books and records. Counterparties to the Designated Contracts shall have until **February 11, 2010** to file an objection to the proposed cure amounts set forth in the Cure Notice. To the extent no objection is filed with regard to a particular cure amount, such cure amount shall be binding on the applicable counterparty.

CH1 11884510.3

6

3. The Trustee shall serve a copy of this Order upon the persons and in the manner specified in the Modification Motion. Such service shall be deemed good and sufficient notice of this Order, the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, and all proceedings to be held thereon.

4. The Court has scheduled **Wednesday, February 3, 2010, at 10:00 a.m. (Central Time)**, or such time thereafter as counsel may be heard, as the date and time for a hearing (the "*Sale Hearing*") to consider entry of an order, pursuant to the Sale Motion and the Modification Motion, authorizing and approving the sale of the Assets free and clear of all liens, claims, rights, interests, charges, and encumbrances, pursuant to 11 U.S.C. § 363 and the Bidding Procedures for the sale of the Assets. The Sale Hearing may, however, be adjourned from time to time by announcement at the Sale Hearing in open Court, without further notice.

5. The Court has scheduled **Tuesday, February 16, 2010, at 10:00 a.m.**, or such time thereafter as counsel may be heard, as the date and time for a hearing (the "*Assignment Hearing*") to consider entry of an order, pursuant to the Sale Motion and the Modification Motion, authorizing and approving the assignment and assumption of the Designated Contract, pursuant to 11 U.S.C. § 365. The Assignment Hearing may, however, be adjourned from time to time by announcement at the Assignment Hearing in open Court, without further notice.

6. The Auction for the Assets shall be held in accordance with the Bidding Procedures as set forth herein, and any person seeking to participate as a bidder at the Auction must comply with the Bidding Procedures.

7. The Stalking Horse Enhancements provisions as set forth in the Sale Motion and the Modification Motion are approved and the Trustee is authorized to designate a stalking horse bidder (the "*Stalking Horse Bidder*") and provide the Stalking Horse Enhancements to such

party; *provided however*, no Stalking Horse Enhancements shall be provided or paid unless the Trustee and the stalking horse bidder have entered into a definitive, binding asset purchase agreement (the "*Stalking Horse APA*") on or before January 26, 2010. Upon designation of the stalking horse bidder, the Trustee shall promptly provide all Qualified Bidder with a copy of the Stalking Horse APA. To the extent the Trustee does not designate a Stalking Horse Bidder, the Trustee shall still conduct the Auction as provided in Paragraph 1(g) hereof.

8. The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

9. This Order is effective immediately upon its entry.

Dated: January 27, 2010

                ENTERED:

                _____
                HON. EUGENE R. WEDOFF
                UNITED STATES BANKRUPTCY JUDGE

CH1 11884510.3