## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CANOPY FINANCIAL, INC., | ) | Case No. 09-44943 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 20, 2010, at 9:30 a.m., or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff in Courtroom 744 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, and present the attached **Final Application of Alvarez & Marsal Dispute Analysis & Forensic Services, LLC for Compensation and Reimbursement of Expenses as Forensic Accountants to the Debtor**.  You may appear at that time and place if you so desire.

Dated:  June 22, 2010

Respectfully submitted,

CANOPY FINANCIAL, INC.

By: _/s/ Vincent E. Lazar_____
One of its Attorneys

Vincent E. Lazar  (6204916)
Melissa M. Hinds (6288246)
Landon S. Raiford (6297473)
JENNER & BLOCK, LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:  312-222-9350
Facsimile:  312-527-0484

## CERTIFICATE OF SERVICE

I, Vincent E. Lazar, an attorney, hereby certify that on June 22, 2010 I caused a copy of the attached **Final Application of Alvarez & Marsal Dispute Analysis & Forensic Services LLC for Compensation and Reimbursement of Expenses as Forensic Accountants to the Debtor**, and **Notice of Motion** to be served: (1) electronically on those entities who receive notice through the ECF system and identified on the attached Service List; and (2) upon the parties who are not receiving notice through the ECF system, either via first-class mail or facsimile, as indicated on the attached Service List.

*/s/ Vincent E. Lazar*
Vincent E. Lazar

## SERVICE LIST

## REGISTRANTS SERVED VIA CM/ECF NOTIFICATION

| | |
|---|---|
| David A. Agay | dagay@kirkland.com, jstempel@kirkland.com, mwawrzyn@kirkland.com |
| Timothy W. Brink | timothy.brink@dlapiper.com, docketing chicago@dlapiper.com, william.guthrie@dlapiper.com |
| Kurt M. Carlson | kcarlson@muchshelist.com, dmyer@muchshelist.com |
| Jason J. DeJonker | jdejonker@seyfarth.com |
| William J. Factor | wfactor@wfactorlaw.com |
| Robert M. Fishman | rfishman@shawgussis.com |
| John T. Gregg | john.gregg@btlaw.com |
| John W. Guzzardo | jguzzardo@shawgussis.com |
| Dean C. Harvalis | constantine.harvalis@usdoj.com |
| Melissa M. Hinds | mhinds@jenner.com |
| Peter Krebs | pkrebs@skadden.com, mmirkovi@skadden.com, jpfleege@skadden.com |
| Vincent E. Lazar | vlazar@jenner.com, lyap@jenner.com;docketing@jenner.com |
| Sara E. Lorber | slorber@wfactorlaw.com |
| Jeff J. Marwil | jmarwil@winston.com, ECF_Bank@winston.com |
| Colleen E. McManus | cmcmanus@muchshelist.com |
| George R. Mesires | grmesires@uhlaw.com |
| William T. Neary | USTPRegion11.ES.ECF@usdoj.gov |
| Gus A. Paloian | gpaloian@seyfarth.com, gpaloian@ecf.epiqsystems.com |
| Mark L. Radtke | mradtke@shawgussis.com, bharrington@shawgussis.com |
| Patrick F. Ross | pfross@uhlaw.com, amgardner@uhlaw.com, kdeedeus@uhlaw.com |
| Daniel Rubin | drubin@statmanharris.com |

| | |
|---|---|
| Marisa L. Saber | msaber@cozen.com |
| Jean Soh | jsoh@polsinelli.com |
| James B. Sowka | jsowka@seyfarth.com |
| Jerry L. Switzer | jswitzer@polsinelli.com |
| Grayson T. Walter | gwalter@proskauer.com |
| Erica Wax | ewax@ulmer.com |

CH1 11883620.2

**VIA FACSIMILE OR FIRST-CLASS MAIL**

United States Trustee
219 S. Dearborn St., Room 819
Chicago, IL  60604
Telephone:  312-886-5785
Facsimile:  312-886-5794

Manish S. Shah
Assistant United States Attorney
U.S. Department of Justice
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
Phone:  312-353-5300
Facsimile:  312-353-2067

Amy Stahl Cotter
Securities and Exchange Commission
175 W. Jackson, Ste. 900
Chicago, IL  60604
Telephone:  312-886-8501
Facsimile:  312-353-7398

Venture Lending & Leasing VI, Inc.
Venture Lending & Leasing V, Inc.
2010 N. 1st. St., Ste. 310
San Jose, CA  95131-2038
Telephone:  408-436-8577
Facsimile:  408-436-8625

Coventry Health Care, Inc.
c/o Neal D. Colton
Cozen O'Connor
1900 Market St.
Philadelphia, PA  19103
Telephone:  215-665-2060
Facsimile:  215-701-2060

Spectrum Equity Investors V, LP
Spectrum V Investment Mgrs.' Fund LP
c/o Jeff J. Marwil
Grayson T. Walter
Proskauer Rose LLP
70 W. Madison St., Ste. 3800
Chicago, IL  60602
Telephone:  312-962-3550
Facsimile:  312-962-3551

Spectrum Equity Investors V, LP
Spectrum V Investment Mgrs.' Fund LP
c/o Michael A. Firestein
Proskauer Rose LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067
Telephone:  310-557-2900
Facsimile:  310-557-2193

UMB Bank N.A.
c/o Lisa A. Epps
Spencer Fane Britt & Browne LLP
1000 Walnut St., Ste. 1400
Kansas City, MO  64106
Telephone:  816-474-8100
Facsimile:  816-474-3216

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA  21126
Facsimile:  215-516-2015

Internal Revenue Service
230 S. Dearborn St.
Room 2400, Stop 6604-CHI
Chicago, IL 60604
Facsimile:  312-566-3915

Martin S. Hancock
4735 Kelvington Dr.
Indianapolis, IN  46254
Telephone:  317-549-5395
Facsimile:  866-235-2935

Kelly Burgon
10091 S. 1330 W.
South Jordan, UT  84095

Coventry Health Care
ATTN:  Allen F. Wise
2751 Centerville Rd., Ste. 400
Wilmington, DE  19808
Telephone:  302-995-6100
Facsimile:  302-633-4044

Carol D'Angelo
3366 SE Snow Rd.
Port Saint Lucie, FL  34984

Card Management Corporation
Attn: Legal Counsel
One Riverfront Place, 8th Floor
Evansville, IN 47708

Deccan I Servs. Pvt. Ltd.
iEnergizer
ATTN:  Ashish Madan
Plot No. 12C/1, South Phase
Thiru-Vi-Ka Industrial Estate
Grundy, Chennai - 600 032
INDIA
Telephone:  044-22253611
E-Mail:  ashishmadan@ienergizer.com
U.S. Contact Address:
   1120 Avenue of the Americas
   New York, NY  10036
   Telephone:  212-626-6684
   Facsimile:  212-626-6685

Dell Marketing LP
ATTN:  Kristen Carey
12234 N. IH 35, Building B
Austin, TX  78753-1705
Telephone:  512-728-3500
Facsimile:  512-728-2958

Dewitt Stern Group
ATTN:  Jolyon F. Stern
420 Lexington Ave., Ste. 2700
New York, NY  10070
Telephone:  212-867-3550
Facsimile:  212-949-2293

William Duncan
276 Via Linda Vista
Redondo Beach, CA  90277

Daniel Fitzsimmons
515 Fenelon Place
Dubuque, IA  52001

Integrated Data Storage
ATTN:  Matt Mazic
70 W. Madison St., Ste. 1625
Chicago, IL  60602
Telephone:  312-334-6400
Facsimile:  312-334-6401

ISU Financial Services
ATTN:  Kaye Chavalas
201 California St., Ste. 200
San Francisco, CA 94111
Telephone:  800-782-9400
Facsimile:  415-248-3534

KPMG
ATTN:  Steven Carlin
757 Third Ave., 11th Floor
New York, NY  10017
Telephone:  212-909-5636
Facsimile:  212-954-5283
E-Mail:  sbcarlin@kpmg.com

Susan Patton
309 E. Main St.
West Frankfort, IL  62896

Qwest Communications
ATTN:  Richard Baer
1801 California
Denver, CO  80202
Telephone:  303-992-1400
Facsimile:  303-896-8515

Shawnee Administrative Servs., LLC
ATTN:  Jamie Simmons
204 E. Oak St.
West Frankfort, IL  62896
Telephone:  618-932-8050
Facsimile:  618-932-8051
E-Mail:  jamie@sas105.com

Thomas Simpson
4970 N. Bonita Ridge Ave.
Tucson, AZ  85750

Statim LLC
ATTN:  Charles Deberry
820 W. Greenwood Ave., #100
Waukegan, IL  60087
Telephone:  847-782-9100
Facsimile:  847-782-9101

Thoughtworks
ATTN:  Trevor Mather
200 E. Randolph St., 25th Floor
Chicago, IL  60601-6501
Telephone:  312-373-1000
Facsimile:  312-373-1001

Top Layer Security
ATTN:  Peter Rendall
1 Cabot Rd.
Hudson, MA  01749
Telephone:  978-212-1500
Facsimile:  978-212-1600

Daniel Young
479 Eisenhower Dr.
Louisville, CO  80027-1155

LEAF Funding, Inc.
11720A Crete Street
Moberly, MO  65270

MGL Consulting Corporation
10077 Grogan's Mill Road, Suite 300
The Woodlands, TX  77380

Ramsay Ehrlich
803 Hearst Avenue
Berkeley, CA  94710

ColoServ
360 Spear Street
Suite 200
San Francisco, CA  94105

RMAP Fleet Lease (RICOH)
1111 Old Eagle School Road
Watne, PA  19087

SunGard Corbel LLC
1660 Prudential Drive
Jacksonville, FL  32207-8197

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CANOPY FINANCIAL, INC., | ) | Case No. 09-44943 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |

**FINAL APPLICATION OF ALVAREZ & MARSAL
DISPUTE ANALYSIS & FORENSIC SERVICES, LLC FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS FORENSIC ACCOUNTANTS AND
OPERATIONAL CONSULTANTS TO THE DEBTOR**

Alvarez & Marsal Dispute Analysis & Forensic Services, LLC ("A&M"), as forensic accountants and operational consultants to the above-captioned debtor ("Canopy" or the "Debtor"), pursuant to sections 327, 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), and the United States Trustee Fee Guidelines — Guidelines for Reviewing Applications for Compensation and Reimbursement of Disbursements Filed under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (the "UST Guidelines"), hereby submits this final application (the "Application") for compensation of services rendered and reimbursement of expenses incurred on behalf of the Debtor for the period from November 25, 2009 through December 30, 2009, seeking allowance of (i) $542,867.50 for the actual, reasonable, and necessary forensic accounting and operational consulting services rendered by A&M, and (ii) actual, reasonable and necessary expenses incurred in the amount of $27,096.24.  In support of the Application, A&M respectfully states as follows:

## BACKGROUND AND JURISDICTION

1.      On November 25, 2009, ("Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

2.      On December 30, 2009, on the Debtor's motion, this Court entered an Order converting the Debtor's chapter 11 case to one under chapter 7, and the U.S. Trustee appointed Gus A. Paloian as the chapter 7 trustee in the case.  (Docket Nos. 92, 93).

3.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 327, 328 and 330 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 2016, Local Rule 5082-1, and the UST Guidelines.

## RETENTION OF ALVAREZ & MARSAL DISPUTE

## ANALYSIS & FORENSIC SERVICES LLP

4.      On, December 11, 2009, the Debtor filed a motion to retain A&M as its forensic accountants and operational consultants *nunc pro tunc* to the Petition Date (Docket No. 47).

5.      On December 30, 2009, prior to the conversion of this case to a Chapter 7 case, the Court authorized the Debtor to employ A&M as its forensic accountants and operational consultants *nunc pro tunc* to the Petition Date.  (Docket No. 90).[1]

6.      The Court's December 30, 2009 Order provided that A&M's compensation for forensic accounting and operational consulting services rendered and reimbursement of expenses incurred "in connection with [A&M's] representation of the Debtor shall be pursuant to applications to be submitted to and approved by this Court …."  (Docket No. 90).

---

[1] Following conversion of the Debtor's case to a case under chapter 7, the Court authorized the Trustee to employ A&M as his forensic accountants for certain matters.

7.      Pursuant to Rule 2016(b), A&M has not shared, nor agreed to share, any compensation it has received or may receive in this case with another person or party other than with A&M's managing directors, directors, managers, associates, and other employees, or any compensation another person or party has received or may receive in this case.

## RELIEF REQUESTED

8.      A&M submits this Application for allowance of (a) compensation for actual, reasonable, and necessary professional services performed as forensic accountants and operational consultants to the Debtor, and (b) reimbursement for actual, reasonable, and necessary disbursements made to pay expenses incurred in assisting the Debtor.

9.      A&M rendered forensic accounting and operational consulting services to the Debtor having a value of $542,867.50, calculated at A&M's usual and customary hourly rates. In addition, A&M made disbursements to pay expenses in the amount of $27,096.24 during the pendency of the Debtor's chapter 11 proceeding.

10.     Prior to the Chapter 11 filing, A&M received three retainer payments totaling $650,000.  A&M rendered forensic accounting and operational consulting services to the Debtor having a value of $298,957.00 in fees and $18,631.01 in expenses, for a total of $317,588.01, which were invoiced and approved by the Special Committee to the board of Canopy Financial, Inc.  $5,450.00 in additional fees and $1,702.48 in additional expenses, for a total of $7,152.48, were incurred by A&M prior to the Debtor's Chapter 11 filing.  Both the approved invoices and additional charges were applied against the retainer received prior to the Company's Chapter 11 filing, leaving $325,259.51 in retainer.

11.     A&M did not receive any payment for services rendered or reimbursement for expenses incurred during the pendency of the Debtor's chapter 11 proceeding.  A&M seeks allowance in this Application of $542,867.50 in fees and $27,096.24 in expenses incurred during

the pendency of the Debtor's chapter 11 proceeding. A&M therefore seeks to apply the remaining retainer of $325,259.51 to the total fees and expenses of $569,963.74, leaving $244,704.23 for which A&M seeks payment from the Debtor's estate.

12.    The fees sought by this Application reflect an aggregate of 1,104.35 hours of forensic accounting and operational consulting time spent and recorded in performing services for the Debtor during the pendency of the Debtor's chapter 11 proceeding. This fee request does not include time that might be construed as duplicative or otherwise not beneficial to the Debtor's estate, which has already been eliminated by A&M.

13.    A schedule showing the name and position of each professional, the hours worked during the pendency of the Debtor's chapter 11 proceeding, and each person's hourly billing rate is provided at the front of this Fee Application.

14.    A&M's fees and costs were incurred as forensic accountants and operational consultants to the Debtor. A&M's fees were derived using the applicable hourly billing rates for the firm's personnel who rendered such services. Attached hereto as <u>Exhibit A</u> is a schedule setting forth all A&M professionals who have performed services in the Debtor's bankruptcy case during the pendency of the Debtor's chapter 11 proceeding, the capacity in which each such individual is employed by A&M, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this case and fees billed therefore.

15.    Attached hereto as <u>Exhibit B</u> is a summary by project categories of the fees generated by the services performed during the Fee Period and, for each separate project category, a list of each person providing services on the project, the hourly billing rate charged for services performed by such individual, a statement of the number of hours spent and the amount of compensation requested for each person on the project.

16.     Attached hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which A&M is seeking reimbursement and the total amount for each such expense category.

17.     Attached hereto as <u>Exhibit D</u> is a detailed list of all expenses for which A&M seeks reimbursement.

18.     A&M maintains computerized records of the time spent by all forensic accountants and operational consultants and the expenses incurred in connection with A&M's assistance for the Debtor in this case.  Copies of these computerized records are attached hereto as <u>Exhibit E</u>.

19.     All of the services for which compensation is sought were rendered to the Debtor solely in connection with the Debtor's bankruptcy case and not on behalf of any individual creditor or other person.

## <u>BASIS FOR PAYMENT</u>

20.     Professional services and expenses for which compensation and reimbursement are sought were rendered and expended on behalf of the Debtor and its estate. All of the fees and expenses sought to be paid or reimbursed in this Application were actual, necessary, and reasonable, and benefited the Debtor's estate and creditors.

21.     During the pendency of the Debtor's chapter 11 proceeding, A&M performed a wide variety of tasks on the Debtor's behalf.  While a detailed descriptions of the day-to-day services provided and the time expended performing such services are attached as <u>Exhibit E</u>, a summary of the services A&M provided to the Debtor during the Fee Period are described in paragraphs 22 through 30 below.

**2008 Cash Flow**
     **(Fees: $3,200.00; Hours 8.0)**

During the pendency of the Debtor's chapter 11 proceeding, A&M compiled a portion of the Debtors operating bank accounts for the period of August 7, 2008 to December 31, 2008.

Sub-matter "Cash Flow – Data Entry" includes entering detailed transactional information from certain bank accounts  into a spreadsheet for later analysis.  A more detailed description of the time spent related to this matter is attached hereto as Exhibit E.

23.     **2009 Cash Flow**
     **(Fees: $141,585.00; Hours 354.7)**

During the pendency of the Debtor's chapter 11 proceeding, A&M compiled and analyzed the Debtors operating bank accounts for the period of January 1, 2009 to November 30, 2009.

Sub-matter "Cash Flow – Data Entry" includes inputting transactions from the Debtor's operating bank accounts during that time period.

Sub-matter "Cash Flow – Data Entry (Jul-Oct 2009)" includes organizing data into a schedule for analysis, analyzing the information to determine the nature of the transactions, classifying transactions into specific categories, and identifying transactions that resulted in disbursement of the Debtor's funds to unauthorized parties during the time period July 1, 2009 to October 31, 2009.

Sub-matter "Cash Flow – QC (Jul-Oct 2009)" includes supervision and review of the data entry of bank statement information and analysis for quality control during the time period July 1, 2009 to October 31, 2009.

Sub-matter "Cash Flow – Data Entry (Jan-Jun, Nov 2009)" includes organizing the data into a schedule for analysis, analyzing the information to determine the nature of the

transactions, classifying transactions into specific categories, and identifying transactions that resulted in disbursement of the Debtor's funds to unauthorized parties during the time periods January 1, 2009 to June 30, 2009, and November 1, 2009 to November 30, 2009.

Sub-matter "Cash Flow – QC (Jan-Jun, Nov 2009)" includes supervision and review of the data entry of bank statement information and analysis for quality control during the time periods January 1, 2009 to June 30, 2009, and November 1, 2009 to November 30, 2009.

Sub-matter "Bank Statements" includes requests and follow-up with financial institutions to obtain additional detail for certain transactions.

Sub-matter "Transaction Schedule – Data Entry" includes entering detailed transactional information received from various financial institutions, including wire transfers, ACH disbursements and other information into a database for further analysis.

Sub-matter "Transaction Schedule – Analysis" includes analyzing transactional data received from various financial institutions, understanding the nature of the data, i.e. was the transaction a disbursement or receipt, and determining if the transaction was potentially non-business related.

Sub-matter "Transaction Schedule - QC" includes supervision and review of the data entry of transactional information, as well as the analysis performed on that schedule for quality control purposes.

Sub-matter "Transactions Binder" includes compiling all information and documentation received from the Company or financial institutions during the analysis.  These binders were provided to various governmental agencies during the investigation to assist the respective agencies with their understanding of the underlying transactions.

24.    **Bank Statement Matrix**
       **(Fees: $18,045.00; Hours 48.1)**

During the pendency of the Debtor's chapter 11 proceeding, A&M compiled a matrix of all identified bank accounts of the Debtor. This category and sub-matter includes time dedicated to identifying bank accounts through review of company documentation, discussion with various banks to confirm bank accounts and request bank statements, and compile this information in a concise format for reporting to various parties including the federal government. A more detailed description of the time spent related to this matter is attached hereto as <u>Exhibit E</u>.

25.    **Custodial Account Issues**
       **(Fees: $49,887.50; Hours 108.3)**

This category and sub-matter covers time spent by A&M analyzing the Debtor's custodial accounts. The Debtor discovered that a significant amount of the health savings account funds belonging to certain of the Debtor's customers had been misappropriated prior to the Debtor's bankruptcy filing. A&M assisted the Debtor in its investigation into this matter, as well as with the Debtor's efforts to ensure no further defalcation of the Debtor's customer accounts occurred, including the implementation of an administrative freeze on certain of the Debtor's accounts. A&M prepared a high level reconciliation of custodial funds, reviewed the Debtor's custodial bank accounts to identify potential inappropriate transfers, and performed a detailed reconciliation of the custodial accounts for one month. A more detailed description of the time spent related to this matter is attached hereto as <u>Exhibit E</u>.

26.    **Financial Advisory**
       **(Fees: $30,707.5; Hours 51.35)**

During the pendency of the Debtor's chapter 11 proceeding, A&M advised the Debtor concerning its continuing business operations while in chapter 11.

Sub-matter "Bankruptcy Issues" includes the preparation, supervision and review of Chapter 11 filings and reports, discussions with creditors, and meetings with various parties involved in the bankruptcy proceedings.

Sub-matter "Operational Analysis" includes assisting the Debtor in creating a bankruptcy split strategy, review of cash position and discussions regarding business operations with various parties, as well as addressing various business issues involving the Debtor.

A more detailed description of the time spent related to this matter is attached hereto as Exhibit E.

27.    **Meetings**
       **(Fees: $63,890.00; Hours 120.2)**

During the pendency of the Debtor's chapter 11 proceeding, there were various meetings for which A&M prepared and attended.

Sub-matter "Prepare for and attend meetings with Jenner Block" includes meetings with Jenner Block, concerning the Company, forensic investigations and/or the pending bankruptcy proceedings.

Sub-matter "Prepare for and attend meetings with SEC/AUSA" includes preparing for and meeting with various governmental entities, including representatives from the Securities and Exchange Commission ("SEC"), Federal Bureau of Investigation, and the United States Attorneys Office.  Specifically, A&M compiled information, reviewed that information and reported that information at meetings with the various representatives.

Sub-matter "Presentation/Reporting" includes meetings to gain an understanding of the Debtor's business and cash flow requirements, and preparing to share that information with the trustee in anticipation of conversion to Chapter 7.

A more detailed description of the time spent related to this matter is attached hereto as Exhibit E.

28.    **Professional Services**
       **(Fees: 22,770; Hours 45.1)**

During the pendency of the Debtor's chapter 11 proceeding, A&M performed professional services at the behest of the Debtor and its counsel.

Sub-matter "Administration" includes developing budgets and communicating with the Debtor and its representatives to determine the most efficient procedures going forward.

Sub-matter "Retention" includes preparing retention documentation for the bankruptcy court and discussing those documents with the Debtor and its counsel.

Sub-matter "Preservation of Records" includes discussing data retention with the Debtor's counsel and employees, as well as communicating that information to Jenner and other interested parties.

A more detailed description of the time spent related to this matter is attached hereto as Exhibit E.

29.    **Requests**
       **(Fees: $63,802.50; Hours 139.4)**

Shortly after the commencement of the Debtor's chapter 11 case, the SEC brought an enforcement action against the Debtor and one its former principals, Jeremy Blackburn. In addition, the United States Attorney has been conducting an investigation into the Debtor's affairs, and shortly after the bankruptcy proceedings were commenced brought criminal charges against Mr. Blackburn.

Sub-matter "SEC/DOJ" includes communicating with the Debtor and the SEC and the DOJ regarding the status of their respective investigations.   A&M provided information to the

SEC and DOJ and assisted the Debtor in responding and cooperating with the SEC and DOJ's investigations.

Sub-matter "Preservation of Records" includes advising the Debtor concerning the preservation of documents and other evidence potentially relevant to the SEC and DOJ's investigations.

Sub-matter "Rule 2004 Subpoena" includes assisting Jenner with investigating potential claims the Debtor's estate may have against third parties, including potential insurance claims, causes of action against certain third parties, and avoidance actions.  This category also includes assisting, at the request of the Debtor's management and Jenner, with Rule 2004 discovery and examinations of third parties in order to determine what claims the Debtor's estate may hold.

Sub-matter "Health Investment Accounts" includes gaining an understanding and performing a reconciliation of the Debtor's Health Investment Accounts at the request of counsel.

Sub-matter "Analysis of Hard Copy and Electronic Records" includes reviewing documents that had been imaged as part of the investigation.  A&M searched specific key words to identify documents that provided additional color to the investigation. In addition, A&M reviewed specific hard copy documents identified from various locations at the client site.

Sub-matter "Caregain" includes time spent addressing issues related to Caregain, a subsidiary of the Debtor.  This included analysis of potential areas where monies could have been misappropriated or financial statements were misrepresented.

A more detailed description of the time spent related to this matter is attached hereto as Exhibit E.

30.    **Sale Related Procedures**
       **(Fees: $148,980.00; Hours 229.20)**

Shortly after the Petition Date, the Debtor sought to sell substantially all of its assets through section 363 of the Bankruptcy Code.   A&M provided substantial assistance to the Debtor in this process.

Sub-matter "Interaction with Potential Purchasers" includes A&M's discussions and negotiations with multiple parties regarding a potential sale of the Debtor's assets, including review and negotiations of various letters of intent from potential buyers.

Sub-matter "Management of Canopy Due Diligence" includes A&M management of employees of the Debtor in preparing for due diligence performed by potential buyers.

Sub-matter "Due Diligence with Qualified Bidders" includes discussions with the Debtor operations including technology platform, legal, finance, business development, implementation, client service, retention, and revenue model with potentially qualified bidders.

Sub-matter "Reporting to Interested Parties" includes discussions and negotiations concerning the status of the sale to interested parties, including reports to the Board of Directors and the Special Committee.   These efforts laid the groundwork that permitted the chapter 7 trustee to complete the sale of the Debtor's assets for several million dollars.   A more detailed description of the time spent related to this matter is attached hereto as Exhibit E.

\*         \*         \*

31.    The foregoing professional services were necessary and appropriate to the administration of the Debtor's estate.   Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.   A&M has taken significant efforts to ensure that the professional services were performed with expedience and in an efficient manner and without duplication of effort.

32.     The rates charged by A&M in this case are its standard rates for a bankruptcy matter.  The rates charged by A&M also are consistent with reasonable and customary hourly rates charged by other forensic accountants and operational consultants throughout the country in matters of similar complexity, scope and national significance.

33.     Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> > (A)     the time spent on such services;
> >
> > (B)     the rates charged for such services;
> >
> > (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> >
> > (E)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

34.     Because of the benefits realized by the Debtor, the nature of this case, the professional accreditations of those who rendered services, the amount of work done, the time consumed, and the skill required, A&M requests that it be allowed at this time compensation for

professional services rendered during the pendency of the Debtor's chapter 11 proceeding in the

sum of $542,867.50.

## ACTUAL AND NECESSARY EXPENSES

35.    A&M has disbursed, and requests reimbursement of, the following sums for:

| | | |
|---|---|---:|
| Airfare | $ | 5,472.09 |
| Business Meals | $ | 3,078.50 |
| In-City Transportation | $ | 2,188.50 |
| Lodging | $ | 14,688.45 |
| Mail/Delivery Charges | $ | 51.04 |
| Photocopying | $ | 1,216.64 |
| Telephone/Internet | $ | 401.02 |
| TOTAL DISBURSEMENTS | $ | 27,096.24 |

A more detailed list of these expenses is part of Exhibit D hereto.

36.    It is A&M's policy to charge all of its clients for identifiable, non-overhead

expenses incurred in connection with the client's case that would not have been incurred except

for representation of that particular client.   It is A&M's policy to charge its client only the

amount actually incurred by A&M in connection with such items.   Examples of such expenses

are postage, overnight mail, courier delivery, transportation, airfare, meals, and lodging.

37.    A&M does not charge for facsimile transmissions.

## NOTICE

38.    Notice of this Application has been given to: (a) the Office of the United States

Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the

United States Attorney Office for the Northern District of Illinois; (e) the Prepetition Lenders;

(f) the Debtor's 20 largest unsecured creditors as set forth in the amended list filed on December

7, 2009, and (g) all parties that have requested notice in the Debtor's case.   In light of the relief

requested, A&M submits that no further notice is required.

39.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, A&M respectfully requests: (i) allowance of compensation for professional services rendered during the pendency of the Debtor's chapter 11 proceeding in the amount of $542,867.50; (ii) allowance of reimbursement for actual and necessary expenses A&M incurred during the pendency of the Debtor's chapter 11 proceeding in the amount of $27,096.24; (iii) authorization for the Trustee to pay A&M for the professional services rendered during the Debtor's chapter 11 proceeding in the amount of $217,607.99; (iv) authorization for the Trustee to reimburse A&M for actual and necessary expenses A&M incurred during the Debtor's chapter 11 proceeding in the amount of $27,096.24; and (v) that the Court grant A&M such other and further relief as is just.

Dated:  June 22, 2010                    Respectfully submitted,

                                         ALVAREZ & MARSAL DISPUTE
                                         ANALYSIS & FORENSIC SERVICES, LLC

                                         By: _____
                                                    Managing Director

Jeffrey Szafran
ALVAREZ & MARSAL DISPUTE
ANALYSIS & FORENSIC SERVICES, LLC
200 Liberty Square Suite 300
Boston, MA 02109
Telephone:  617-449-7830
Facsimile:  617-688-6244