**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-44943 |
| | ) | Chapter 7 |
| CANOPY FINANCIAL, INC., | ) | |
| | ) | Hon. Deborah L. Thorne |
| Debtor. | ) | |
| | ) | Hearing Date:  November 1, 2018 |
| | ) | Hearing Time: 9:30 a.m. |
| | ) | |

**COVER SHEET FOR NINETEENTH AND FINAL APPLICATION OF**
**SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN**
**FOR THE PERIOD OF NOVEMBER 1, 2016 THROUGH THE CLOSING OF THE CASE**

Name of Applicant:                                          Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                                  Chapter 7 Trustee Gus A. Paloian

Date of Appointment:                                      January 19, 2010, retroactive to December 30, 2009

Period for which Compensation
and Reimbursement is Sought:                     November 1, 2016 through the Closing of the Case

Amount of Interim Compensation
Sought:                                                           $     53,315.00
                                                                         .

Amount of Interim Expense
Reimbursement Sought:                                 $       3,040.33

Amount of Final Compensation Sought:        $12,801,106.35

Amount of Final Expense
Reimbursement Sought:                                 $     383,211.41

This is an:        _____   Final    __X__   Interim Application.

Prior Applications:

| | **SEYFARTH'S PRIOR INTERIM FEE APPLICATIONS IN CHAPTER 7 CASE** | | | | | |
|---|---|---|---|---|---|---|
| Interim App. | Filing Date & Docket Number(s) | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
| 1st | 04/14/10 [221] | 12/30/09 - 2/28/10 | $487,417.50 [$462,037.80] | $10,650.66 [$6,032.86] | $468,070.66 | $468,070.66 |
| 2nd | 08/24/10 [330] | 03/01/10 - 6/30/10 | $649,090.00 [$550,548.69] | $16,607.80 [$11,074.11] | $561,622.80 | $561,622.80 |
| Supp. to 1st | 08/24/10 [332] | 12/30/09 - 02/28/10 | $18,314.50 [$16,782.00] | $4,447.80 [$80.15] | $16,862.15 | $16,862.15 |
| 3rd | 11/16/10 [410] | 07/01/10- 09/30/10 | $638,368.50 [$633,369.00] | $24,133.03 [$24,133.03] | $657,502.03 | $657,502.03 |
| Supp. to 2nd | 02/23/11 [495] | 03/01/10 - 6/30/10 | $94,188.91 [$94,188.91] | $2,324.06 [$2,324.06] | $96,512.97 | $96,512.97 |
| 4th | 02/23/11 [494] | 10/01/10- 12/31/10 | $558,446.00 [$557,887.50] | $7,971.76 [$7,971.76] | $565,859.26 | $565,859.26 |
| 5th | 07/20/11 [614] | 01/01/11- 05/31/11 | $1,194,437.00 [$1,194,437.00] | $55,951.98 [$55,951.98] | $1,250,388.98 | $1,250,388.98 |
| 6th | 11/01/11 [683] | 06/01/11 - 09/30/11 | $924,266.00 [$922,927.60] | $32,245.05 [$32,245.05] | $955,172.65 | $955,172.65 |
| 7th | 03/28/12 [790] | 10/01/11 - 01/31/12 | $881,676.00 [$881,676.00] | $26,021.37 [$26,021.37] | $907,747.37 | $907,747.37 |
| 8th | 08/16/12 [868] | 02/01/12- 07/31/12 | $1,621,029.50 [$1,619,109.50] | $33,429.53 [$33,129.53] | $1,652,239.03 | $1,652,239.03 |
| 9th | 12/5/12 [912] | 8/1/12 - 10/31/12 | $637,897.50 [$633,205.50] | $23,187.49 [$22,888.49] | $656,093.99 | $656,093.99 |
| 10th | 05/8/13 [946] | 11/01/12 - 03/31/13 | $902,665.00 [$902,665.00] | $17,107.72 [$17,107.72] | $919,772.72 | $919,772.72 |
| 11th | 10/25/13 [973] | 04/01/13 - 09/30/13 | $1,127,202.00 [$1,127,202.00] | $37,201.21 [$37,201.21] | $1,164,403.21 | $1,164,403.21 |

41565785v.1

| | | | **SEYFARTH'S PRIOR INTERIM FEE APPLICATIONS IN CHAPTER 7 CASE** | | | |
|---|---|---|---|---|---|---|
| Interim App. | Filing Date & Docket Number(s) | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
| 12th | 03/05/14 [1018] | 10/01/13 - 01/31/14 | $734,946.50 [$734,946.50] | $40,188.39 [$40,188.39] | $775,134.89 | $775,134.89 |
| 13th | 07/24/14 [1047] | 02/01/14 - 05/31/14 | $616,510.00 [$590,234.00] | $32,851.83 [$32,851.83] | $623,085.83 | $623,085.83 |
| Supp to 13th | 11/21/14 [1055] | 02/01/14 - 05/31/14 | $17,920.50 [$17,920.50] | $0.00 | $17,920.50 | $17,920.50 |
| 14th | 11/21/14 [1054] | 06/01/14- 10/31/14 | $568,006.00 [$541,038.85] | $6,449.56 [$6,449.56] | $547,488.41 | $547,488.41 |
| 15th | 4/10/15 [1064] | 11/01/14 - 02/28/15 | $309,247.50 [$301,962.00] | $1,598.02 [$1,598.02] | $303,560.02 | $303,560.02 |
| 16th | 09/08/15 [1091] | 03/01/15 - 07/31/15 | $401,402.00 [$387,625.00] | $966.90 [$966.90] | $388,591.90 | $388,591.90 |
| 17th | 03/04/16 [1129] | 08/01/15 - 01/31/16 | $546,747.50 [$546,747.50] | $17,701.71 [$17,701.71] | $564,449.21 | $564,449.21 |
| 18th | 12/02/16 [1146] | 02/01/16 - 10/31/16 | $35,554.50 [$31,280.50] | $4,203.35 [$4,203.35] | $35,483.85 | $35,483.85 |
| | | | | **TOTAL** | **$13,127,962.43** | **$13,127,962.43** |

Dated: October 5, 2018

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate,

By: /s/ Gus A. Paloian

Gus A. Paloian (06188186)
James B. Sowka (6291998)
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000

41565785v.1

Facsimile:  (312) 460-7000
*Counsel to Chapter 7 Trustee,*
*Gus A. Paloian*

4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-44943 |
| | ) | Chapter 7 |
| CANOPY FINANCIAL, INC., | ) | |
| | ) | Hon. Deborah L. Thorne |
| Debtor. | ) | |
| | ) | Hearing Date:  November 1, 2018 |
| | ) | Hearing Time:  9:30 a.m. |

**NINETEENTH AND FINAL APPLICATION OF SEYFARTH SHAW LLP FOR**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES AS**
**COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE**
**PERIOD FROM NOVEMBER 1, 2016 THROUGH THE CLOSING OF THE CASE**

Pursuant to Sections 105(a), 330, and 331 of title 11 of the United States Code

(the "Bankruptcy Code"), Seyfarth Shaw LLP ("Seyfarth"), as counsel to Gus A. Paloian, not

individually or personally, but solely in his capacity as the duly-appointed Chapter 7 trustee (the

"Trustee") of the bankruptcy estate (the "Estate") of Canopy Financial, Inc. (the "Debtor"),

hereby submits its Nineteenth and Final Application for Compensation and Reimbursement of

Expenses (the "Application") for legal services performed, and expenses incurred, during the

period of November 1, 2016 through the Closing of the Case (the "Application Period").  In

support of this Application, Seyfarth respectfully represents as follows:

## I.  INTRODUCTION

1.     As described more fully below, during the Application Period, Seyfarth:

(a)     Continued to review and analyze the respective claims of the Estate and

prepared for and represented the Trustee at status and motion hearings; and

(b)     Provided assistance for other general matters related to the administration

and closing of the Estate.

2.     In conjunction with these efforts and at the direction of the Trustee, Seyfarth has sought and recovered assets, fraudulent transfers, and damages against third party defendants for the benefit of the Estate and the Debtor's creditors.

3.     During the Application Period, Seyfarth performed its final review and resolution of additional HSA, unsecured and subordinated claims against the Estate.  Seyfarth assisted the Trustee in confirming that all claims had been paid pursuant to the allowed interim distributions, negotiated the resolution of a remaining tax claim and worked with the U.S. Department of Justice to confirm that all victims had been compensated.  Seyfarth also assisted the Trustee in determining property to be abandoned.

4.     Seyfarth respectfully seeks an Order of this Court awarding payment from the Estate of: (a) final allowance of compensation in the amount of $53,315.00 for professional services rendered by Seyfarth on behalf of the Trustee during the Application Period; and (b) final reimbursement of actual and necessary expenses in the amount of $3,040.33 incurred by Seyfarth in rendering such professional services to the Trustee during the Application Period.

## II.  JURISDICTION AND STATUTORY PREDICATES

5.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

6.     Seyfarth makes this Application pursuant to: (a) sections 105(a), 330, and 331 of the Bankruptcy Code; (b) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (c) applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted by

2

the Office of the United States Trustee (the "Guidelines"); (d) Rule 5082-1 of the Bankruptcy

Court's Local Rules; (e) that certain Order of the Court entered on January 19, 2010, in the

above-captioned case (the "Case") authorizing Seyfarth's retention as counsel to the Trustee

retroactive to December 30, 2009 ("Seyfarth Retention Order"); and (f) applicable case law.

### III.  **BACKGROUND**

7.    On November 25, 2009, the Debtor filed its voluntary petition for relief under

Chapter 11 of the Bankruptcy Code.

8.    On December 30, 2009, the Bankruptcy Court entered an Order converting the

Debtor's Chapter 11 Case to one under Chapter 7 and authorizing the Trustee to operate the

Debtor's business.  The U.S. Trustee appointed Gus A. Paloian as the Chapter 7 trustee in the

Case.  *See* Docket Nos. 92, 93.

9.    In accordance with section 504(b)(1) of the Bankruptcy Code and Bankruptcy

Rule 2016, Seyfarth has received no promises for payment for services rendered or to be

rendered in any capacity whatsoever in connection with the Case, other than specifically

provided for in the Seyfarth Retention Order.  Additionally, other than as permitted by section

504(b)(1) of the Bankruptcy Code and Bankruptcy Rule 2016(a), no agreement or

understanding exists between Seyfarth and any other entity for a division of compensation and

reimbursement received or to be received for services rendered in or in connection with the

Case.

### IV.  SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

### A.  **Overview**

10.    This Application is the Nineteenth and Final Fee Application for compensation

and expense reimbursement that Seyfarth has filed in this Case.

41565785v.1

11.    On April 14, 2010, Seyfarth filed its First Interim Fee Application requesting $487,417.50 for legal services rendered, and reimbursement of expenses in the amount of $10,650.66. On May 11, 2010, the Court awarded Seyfarth fees in the amount of $462,037.80 and reimbursement of expenses in the amount of $6,032.86. On September 14, 2010, the Court awarded Seyfarth additional fees in the amount of $16,782.00 and additional expense reimbursement of $80.15.

12.    On August 24, 2010, Seyfarth filed its Second Interim Fee Application requesting $649,090.00 for legal services rendered, and reimbursement of expenses in the amount of $16,607.80. On September 14, 2010, the Court awarded Seyfarth fees in the amount of $550,549.69 and reimbursement of expenses in the amount of $11,974.11.

13.    On November 16, 2010, Seyfarth filed its Third Interim Fee Application requesting $638,368.50 for legal services rendered, and reimbursement of expenses in the amount of $24,133.03. On December 8, 2010, the Court awarded Seyfarth fees in the amount of $633,369.00 and reimbursement of expenses in the amount of $24,133.03.

14.    On February 23, 2011, Seyfarth filed its Fourth Interim Fee Application requesting $558,446.00 for legal services rendered, and reimbursement of expenses in the amount of $7,971.76. On March 16, 2011, the Court awarded Seyfarth fees in the amount of $557,887.50 and reimbursement of expenses in the amount of $7,971.76.

15.    On July 20, 2011, Seyfarth filed its Fifth Interim Fee Application requesting $1,194,437.00 for legal services rendered, and reimbursement of expenses in the amount of $55,951.98. On August 16, 2011, the Court awarded Seyfarth fees in the amount of $1,194,437.00 and reimbursement of expenses in the amount of $55,951.98.

16.    On November 1, 2011, Seyfarth filed its Sixth Interim Fee Application requesting $924,266.00 for legal services rendered, and reimbursement of expenses in the amount of

4

$32,245.05.  On November 22, 2011, the Court awarded Seyfarth fees in the amount of

$922,927.60 and reimbursement of expenses in the amount of $32,245.05.

17.    On March 28, 2012, Seyfarth filed its Seventh Interim Fee Application requesting

$881,676.00 for legal services rendered, and reimbursement of expenses in the amount of

$26,021.37.  On April 18, 2012, the Court awarded Seyfarth fees in the amount of $881,676.00

and reimbursement of expenses in the amount of $26,021.37.

18.    On August 16, 2012, Seyfarth filed its Eighth Interim Fee Application requesting

$1,621,029.50 for legal services rendered, and reimbursement of expenses in the amount of

$33,429.53.  On September 12, 2012, the Court awarded Seyfarth fees in the amount of

$1,619,109.50 and reimbursement of expenses in the amount of $33,129.53.

19.    On December 5, 2012, Seyfarth filed its Ninth Interim Fee Application requesting

$637,897.50 for legal services rendered, and reimbursement of expenses in the amount of

$23,187.49.  On December 28, 2012, the Court awarded Seyfarth fees in the amount of

$633,205.50 and reimbursement of expenses in the amount of $22,888.49.

20.    On May 8, 2013, Seyfarth filed its Tenth Interim Fee Application requesting

$902,665.00 for legal services rendered, and reimbursement of expenses in the amount of

$17,107.72.  On May 29, 2013, the Court awarded Seyfarth fees in the amount of $902,665.00

and reimbursement of expenses in the amount of $17,107.72.

21.    On October 25, 2013, Seyfarth filed its Eleventh Interim Fee Application

requesting $1,127,202.00 for legal services rendered, and reimbursement of expenses in the

amount of $37,201.21.  On November 26, 2013, the Court awarded Seyfarth fees in the amount

of $1,127,202.00 and reimbursement of expenses in the amount of $37,201.21.

22.    On March 5, 2014, Seyfarth filed its Twelfth Interim Fee Application requesting

$734,946.50 for legal services rendered, and reimbursement of expenses in the amount of

$40,188.39.  On March 26, 2014, the Court awarded Seyfarth fees in the amount of

$734,946.50  and reimbursement of expenses in the amount of $40,188.39.

      23.    On July 24, 2014, Seyfarth filed its Thirteenth Interim Fee Application requesting

$616,510.00 for legal services rendered, and reimbursement of expenses in the amount of

$32,851.83.  On August 20, 2014, the Court awarded Seyfarth fees in the amount of

$590,234.00  and reimbursement of expenses in the amount of $32,851.83.

      24.    On November 21, 2014, Seyfarth filed its Fourteenth Interim Fee Application

requesting $568,006.00 for legal services rendered, and reimbursement of expenses in the

amount of $6,449.56.  On December 16, 2014, the Court awarded Seyfarth fees in the amount

of $541,038.85  and reimbursement of expenses in the amount of $6,449.56.

      25.    On April 10, 2015, Seyfarth filed its Fifteenth Interim Fee Application requesting

$309,247.50 for legal services rendered, and reimbursement of expenses in the amount of

$1,598.02.  On May 12, 2015, the Court awarded Seyfarth fees in the amount of $301,962.00

and reimbursement of expenses in the amount of $1,598.02.

      26.    On August 13, 2015, Seyfarth filed its Sixteenth Interim Fee Application

requesting $401,402.00 for legal services rendered, and reimbursement of expenses in the

amount of $966.90.  On September 8, 2015, the Court awarded Seyfarth fees in the amount of

$387,625.00  and reimbursement of expenses in the amount of $966.90.

      27.    On March 4, 2016, Seyfarth filed its Seventeenth Interim Fee Application

requesting $561,747.50 for legal services rendered, and reimbursement of expenses in the

amount of $17,701.71.  On March 29, 2016, the Court awarded Seyfarth fees in the amount of

$546,747.50 and reimbursement of expenses in the amount of $17,701.71.

      28.    On December 2, 2016, Seyfarth filed its Eighteenth Interim Fee Application

requesting $35,554.50 for legal services rendered, and reimbursement of expenses in the

6

amount of $4,203.35.  On December 28, 2016, the Court awarded Seyfarth fees in the amount

of $31,280.50 and reimbursement of expenses in the amount of $4,203.35.

29.    During the Application Period, Seyfarth: (a) provided legal services to the Trustee

in the amount of $53,315.00 (the "Fees"), and (b) advanced costs in the amount of $3,040.33

(the "Expenses") in connection with the legal services that it provided to the Trustee.

30.    The following table consists of a breakdown of the amount of Fees incurred by

each Seyfarth professional, including each such professional's title, hourly rate, total hours

expended in providing legal services in the Case, and the value attributable to such legal

services: Biographies for the attorneys listed above who performed the bulk of the services in

this matter during the Application Period were previously submitted to the Court as part of the

First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth,

Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth and Eighteenth Applications [*see*

Dkt. Nos. 221, 330, 410, 494, 614, 683, 790, 868, 912, 946, 973, 1018, 1047, 1054, 1064,

1091, 1129 and 1146 at Exhibit 1]).

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2016  $695.00<br>2017  $695.00<br>2018  $705.00 | 31.40 | $21,878.00 |
| Richard Lutkus | Partner | 2016  $470.00<br>2017  $495.00 | 1.10 | $544.50 |
| James B. Sowka | Partner | 2017  $460.00 | .70 | $322.00 |
| Christopher J. Harney | Associate | 2016  $415.00 | 2.00 | $830.00 |
| Bret M. Harper | Associate | 2016  $355.00<br>2017  $355.00<br>2018  $405.00 | 3.20 | $1,191.00 |

7

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | 2016  $315.00<br>2017  $315.00<br>2018  $330.00 | 84.50 | $26,964.00 |
| Julie Ziegler | Former Case Assistant | 2016  $105.00<br>2017  $105.00 | 15.10 | $1,585.50 |
| **TOTAL:** | | | **138.00** | **$53,315.00** |

31.    During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

32.    All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth's services, as requested by the Trustee, during the Application Period.

33.    Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

34.    Seyfarth further submits that the total fees sought herein, for services rendered during the Application Period, have been voluntarily reduced in the aggregate amount of $3,254.00.

## B. Time and Expense Records

35.    Seyfarth maintains written records of the time expended by its professionals. These time records are maintained: (a) contemporaneously with the rendition of services by

8

each Seyfarth professional, and (b) separately from those of the Trustee, in accordance with procedures established within this District.

36.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 1** and which are incorporated herein by reference, set forth in detail: (a) the services which Seyfarth rendered on behalf of the Trustee, (b) the dates upon which such services were rendered, (c) the amount of time spent on the services in one-tenth of one hour increments, and (d) the identity of each Seyfarth professional who performed such services.

37.     Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought are attached hereto as **Exhibit 2** and incorporated herein by reference.

## C.  Breakdown of Fees by Category of Services Rendered

38.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into four (4) categories, as follows: (a) Case Administration; (b) Claims Administration and Analysis; (c) Fee Applications; and (d) Other Professional Fee Applications.

### CASE ADMINISTRATION (57.00 HOURS VALUED AT $20,519.50)

39.     During the Application Period, Seyfarth expended 57.00 hours, worth a value of $20,519.50 on behalf of the Trustee on general case administration matters, including:

A.     Preparing, revising, finalizing and filing a Report of Unclaimed Funds;

B.     Preparing application to retain accountant and appearing in Court on the application;

C.     Communicating with representatives of subordinated creditors regarding case wind-down and case closing status;

9

D.   Reviewing property of the Debtor for abandonment purposes, including

personnel files, computer software/hardware, artwork, office supplies and

miscellaneous documents; and

E.   Preparing notices of intent to abandon property.

40.   A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2016  $695.00<br>2017  $695.00<br>2018  $705.00 | 13.60 | $9,458.00 |
| Richard Lutkus | Partner | 2016  $470.00<br>2017  $495.00 | 1.10 | $544.50 |
| James B. Sowka | Partner | 2017   $460.00 | .70 | $322.00 |
| Bret M. Harper | Associate | 2016   $355.00<br>2017   $355.00<br>2018   $405.00 | .70 | $248.50 |
| Jennifer M. McManus | Paralegal | 2016   $315.00<br>2017   $315.00<br>2018   $330.00 | 26.90 | $8,476.50 |
| Julie Ziegler | Former Case Assistant | 2016   $105.00<br>2017   $105.00 | 14.00 | $1,470.00 |
| **TOTAL:** | | | **57.00** | **$20,519.50** |

### CLAIMS ADMINISTRATION AND ANALYSIS (14.60 HOURS VALUED AT $6,385.00)

41.   During the Application Period, Seyfarth expended 14.60 hours, worth a value of

$6,385.00, on behalf of the Trustee on matters related to Claims Administration and Analysis,

including:

A.   Revising and maintaining multiple claims analysis spreadsheets;

10

B.    Reviewing final potential claim objection and negotiating resolution of same; and

C.    Preparing and revising final claims distribution to subordinated claimants.

42.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2016  $695.00<br>2017  $695.00<br>2018  $705.00 | 4.70 | $3,266.50 |
| Jennifer M. McManus | Paralegal | 2016   $315.00<br>2017   $315.00<br>2018   $330.00 | 9.90 | $3,118.50 |
| **TOTAL:** | | | **14.60** | **$6,385.00** |

**SALE OF ASSETS (14.90 HOURS VALUED AT $7,669.00)**

43.    During the Application Period, Seyfarth expended 14.90 hours, worth a value of $7,669.00, on behalf of the Trustee on matters related to Sale of Assets, including:

A.    Communicating with three interested parties regarding the purchase of the Estate's remnant assets;

B.    Preparing and revising remnants sale motion and asset purchase agreements;

C.    Preparing for and attending hearing on remnants sale motion; and

D.    Conducting auction.

44.    A breakdown of the professionals providing services in this category is as follows:

11

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2017  $695.00<br>2018  $705.00 | 7.10 | $4,983.50 |
| Jennifer M. McManus | Paralegal | 2017   $315.00<br>2018   $330.00 | 5.30 | $1,743.00 |
| Bret M. Harper | Associate | 2017   $355.00<br>2018   $405.00 | 2.50 | $942.50 |
| **TOTAL:** | | | **14.90** | **$7,669.00** |

## FEE APPLICATIONS (46.90 HOURS VALUED AT $17,040.50)

45.    During the Application Period, Seyfarth expended 46.90 hours, worth a value of $17,040.50 in preparing Seyfarth's Eighteenth Interim Fee Application and appearing in Court for the hearing on that application; preparing Seyfarth's Nineteenth and Final Fee Application and preparing Trustee's Fifth and Final Fee Application.  The fees for preparing these applications represent approximately 5.5% of the total of the applications.

46.    In this Application, Seyfarth spent 8.90 hours for a total of $2,662.50 in connection with preparing, reviewing, revising and filing its Eighteenth Interim Fee Application, representing approximately 7% of the total of that application.

47.    In this Application, Seyfarth spent 12.40 hours for a total of $4,722.00 in connection with preparing, reviewing, and revising its Nineteenth and Final Fee Application, representing approximately 8.5% of the total of that fee application.

48.    In this Application, Seyfarth spent 16.30 hours for a total of $6,615.00 in preparing the Trustee's Fifth and Final Fee Application, representing approximately 2.85% of the total of that fee application.

12

49.    A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2016  $695.00<br>2017  $695.00<br>2018  $705.00 | 6.00 | $4,170.00 |
| Christopher J. Harney | Associate | 2016   $415.00 | 2.00 | $830.00 |
| Jennifer M. McManus | Paralegal | 2016  $315.00<br>2017  $315.00<br>2018  $330.00 | 37.80 | $11,925.00 |
| Julie Ziegler | Former Case Assistant | 2016  $105.00<br>2017  $105.00 | 1.10 | $115.50 |
| **TOTAL:** | | | **46.90** | **$17,040.50** |

**OTHER PROFESSIONAL FEE APPLICATIONS (5.40 HOURS VALUED AT $1,701.00)**

50.    During the Application Period, Seyfarth expended 5.40 hours, worth a value of

$1,701.00 in matters related to other professional fee applications, including:

A.    Preparing, revising and finalizing two of the Estate accountants' first and

final fee applications in preparation for submission to the Court.

51.    A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | 2017   $315.00<br>2018   $330.00 | 5.40 | $1,701.00 |
| **TOTAL:** | | | **5.40** | **$1,701.00** |

13

## D.  Incurred Expenses

52.    As set forth in attached **Exhibit 2**, Seyfarth advanced $3,040.33 in Expenses on behalf of the Estate during the Application Period.

53.    A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

54.    The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

55.    Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate at cost.

56.    During this Application Period, Seyfarth voluntarily reduced its expenses by $103.30.

57.    The following chart summarizes the complete out-of-pocket costs associated with the categories of Seyfarth expenses:

| CATEGORY | EXPENSES INCURRED |
|---|---:|
| Courier/Messenger | $19.23 |
| Duplicating Charges | $1,412.70 |
| Online Research-PACER | $7.60 |
| Postage | $1,600.80 |
| **TOTAL** | **$3,040.33** |

41565785v.1

## V.  **RELIEF REQUESTED**

58.   Seyfarth respectfully requests that the Court: (a) allow and award it on an interim

basis (i) the Fees, consisting of $53,315.00 for legal services rendered to the Trustee, and

(ii) the Expenses, in the amount of $3,040.33, incurred in connection with such services

(collectively, the "Requested Fees and Expenses"); and (b) authorize the Trustee to make

prompt payment of the Requested Fees and Expenses to Seyfarth from the Estate.

59.   A proposed order providing for the requested relief is attached hereto for the

Court's consideration.

## VI.  **BASIS FOR THE REQUESTED RELIEF**

### A.  **Compensation Standards**

60.   Pursuant to section 331 of the Bankruptcy Code, a professional person employed

under section 327 may generally apply for interim compensation from a bankruptcy court.

See 11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional

person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C.

§ 330(a)(1)(A).

61.   In determining the "extent and value of compensation," this Court has endorsed

and applied the "'lodestar' approach—multiplying the number of actual and necessary hours

reasonably expended by a reasonable hourly rate[.]" In re Wildman, 72 B.R. 700, 712 (Bankr.

N.D. Ill. 1987) (Schmetterer, J.); accord In re UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir.

1993) (lodestar approach provides fair compensation under section 330); see also City of

Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992)

("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting

jurisprudence.  We have established a 'strong presumption' that the lodestar represents the

'reasonable' fee[.]").

15

62.     To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has

"emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same

compensation as they would earn in performing similar services outside the context of

bankruptcy."[1] In re UNR Indus., Inc., 986 F.2d at 210 (emphasis added).  The statutory aim is

twofold: (a) "that attorneys be reasonably compensated," and (b) "that future attorneys not be

deterred from taking bankruptcy cases due to a failure to pay adequate compensation." Id.; see

also In re Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy

practitioners not to leave the field in favor of more lucrative areas of the law.") (citing

legislative history to Section 330).

63.     As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly

"stressed that the best measure of the cost of an attorney's time is what that attorney could earn

from paying clients"—that is, the attorney's "standard hourly rate." Gusman v. Unisys Corp.,

986 F.2d 1146, 1150 (7th Cir. 1993); accord Small v. Richard Wolf Med. Instruments Corp.,

264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some

'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (In

re Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

64.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate

. . . is considered to be the presumptive market rate." Small, 264 F.3d at 707.  Moreover, "[t]he

lawyer's regular rate is *strongly presumed* to be the market rate for his or her services."

Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S.

1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001); see also Central States, S.E. & S.W. Areas

Pension Fund v. Central Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." In re UNR Indus., Inc., 986 F.2d at 208-09; see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

fee, one counsel would charge 'to the meanest villain', *is* the market rate for that lawyer's

services.") (emphasis added and quoting <u>Barrow v. Falck</u>, 977 F.2d 1100, 1106 (7th Cir.

1992)), <u>cert. denied sub nom.</u> <u>Mason & Dixon Lines v. Central States, S.E. & S.W. Areas

Pension Fund</u>, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

65.     Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court." <u>Gusman</u>, 986 F.2d at 1150;

<u>accord</u> <u>In re Spanjer Bros., Inc.</u>, 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

66.     "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'" <u>Mathur v. Board of Trs. of S. Ill. Univ.</u>,

317 F.3d 738, 743 (7th Cir. 2003) (quoting <u>Spegon v. Catholic Bishop of Chicago</u>, 175 F.3d

544, 555 (7th Cir. 1999)); <u>see also</u> <u>Gusman</u>, 986 F.2d at 1151 ("the ability to identify a

different average rate in the community" is an impermissible reason to depart from an

attorney's billing rate).

67.     Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time

at the rate normally charged." <u>In r*e* Farley, Inc.</u>, 156 B.R. at 211.

68.     Additionally, under generally accepted standards, if the services of an attorney

employed under section 327 are reasonably likely to benefit a debtor's estate, they should be

compensable.  <u>See</u> <u>Andrews & Kurth L.L.P. v. Family Snacks, Inc.</u> (<u>In re Pro-Snax</u>

17

Distributors, Inc.),157 F.3d 414, 421 (5th Cir. 1998); In re Ames Dep't Stores, Inc., 76 F.3d 66,

71 (2d Cir. 1996); 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed.

rev. 1999); cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are

those that aid the professional's client in fulfilling its duties under the Code."  In re Ben

Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

69.    Thus, the determination of benefit to the Estate is not constrained to a dollar-for-

dollar measurement, such that each dollar's worth of legal services must bring a cash dollar

into the Estate in order to justify equivalent compensation to counsel.  See In re Lifschultz Fast

Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have

always included services that aid in the administration of the case and help the client fulfill

duties under bankruptcy law, whether or not those services result in a monetary benefit to the

estate."); accord In re Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7

(Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors

other than the economic impact on the estate of actions taken should be considered in the

'benefit to the estate' analysis"); In re Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind.

1993) (same); see, e.g., Ben Franklin Retail Store, Inc., 227 B.R. at 270 ("[A] trustee (or

interim trustee) performs necessary services when he carries out the duties set forth in § 704 of

the Code."); JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (In re JMP-

Newcor Int'l, Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming

bankruptcy court's award of fees to firm for advising committee in reasonable way and in good

faith despite lack of direct monetary benefit to debtor and estate).

70.    Instead, other factors, such as "whether the services rendered promoted the

bankruptcy process or administration of the estate in accordance with the practice and

procedures provided under the Bankruptcy Code and Rules for the orderly and prompt

18

disposition of bankruptcy case and related adversary proceedings," also support awards of

compensation.  In re Spanjer Bros., Inc., 191 B.R. at 748.

71.   As previously stated, the legal services for which Seyfarth requests allowance and

payment of compensation relate to the Application Period, and were rendered in connection

with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the

Trustee during that time.

72.   Seyfarth respectfully submits that such legal services have, in all respects, been

reasonable, necessary, and beneficial to the Estate.  In this connection, these services were

performed within a reasonable amount of time commensurate with the complexity, importance,

and nature of the matters which they concerned.

73.   Further, they promoted the bankruptcy process and the administration of the

Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the

Bankruptcy Code and Bankruptcy Rules.

74.   For purposes of this Application, Seyfarth has computed the Fees on the basis of

its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated

to the Case at the time that such services were rendered.

75.   Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar"

rate—during the Application Period was $644.93.

76.   During the Application Period, Seyfarth's discounted hourly billing rates for

professionals providing services in the Case ranged from: (a) $355.00 to $705.00 for attorneys,

and (b) $105.00 to $330.00 for paralegals or para-professionals.  Based upon all of the

foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal services

that it rendered during the Application Period is $53,315.00.

41565785v.1

77.    In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

78.    Moreover, the requested compensation is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

79.    In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

80.    Finally, and with respect to new considerations added to the Bankruptcy Code under BAPCPA—that is, the new "relevant factor" of whether a professional "is board certified or otherwise has demonstrated skill and experience in the bankruptcy field,"  11 U.S.C. § 330(a)(3)(E)—Seyfarth has attached its Attorney Biographical Information as Exhibit 1.  The Attorney Biographical Information sets forth the qualifications of the Seyfarth attorneys listed herein and whose biographies were not submitted to the Court as part of Seyfarth's previous fee applications [*see* Dkt. Nos. 221, 330, 410, 494, 614, 683, 790, 868, 912, 946, 973, 1018, 1047, 1054, 1064 and 1091 at Exhibit 1], including their demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and in representation of clients in matters nationwide.

## B.  Expense Reimbursement Standards

81.    With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

20

82.    "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." In re Spanjer Bros., Inc., 191 B.R. at 749; accord In re Wildman, 72 B.R. at 731.

83.    In that regard, Seyfarth is requesting reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that it incurred these expenses because they were required to accomplish the proper representation of the Trustee and the advancement of the Estate's interests in the Case.  As set forth above, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.  In addition, based on the Court's prior findings, Seyfarth is not seeking Lexis/Westlaw expense reimbursement in this Application.

84.    Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead" which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939; Wildman, 72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost." In re Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584).[2]

85.    In contrast, Seyfarth charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.); see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost."); Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such as rent, heat, and the like*, that cannot be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added).

21

previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

86.    Finally, in seeking reimbursement for such costs, the Seventh Circuit has established guidelines and cautioned that an applicant "[is] not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

87.    In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## VII.  <u>NO PRIOR REQUEST</u>

88.    No prior request for the relief requested in this Application has been made to this Court or to any other court.

## VIII.  <u>CONCLUSION</u>

For all the foregoing reasons, Seyfarth Shaw LLP respectfully requests that the Court enter an Order in substantially the same form as attached hereto:

A.     Finding Notice of the Application sufficient as given and that no other or further notice is necessary;

B.     Allowing and awarding Seyfarth on a final basis the Requested Fees and Expenses;

C.     Authorizing the Trustee to make payment of such Fees and Expenses to Seyfarth from the Estate, and

D.     Granting such other and further relief as this Court deems just and proper.

41565785v.1

Dated: October 5, 2018

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate

By:/s/ Gus A. Paloian
Gus A. Paloian (06188186)
James B. Sowka (6291998)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

*Counsel to Chapter 7 Trustee,*
*Gus A. Paloian*

23

41565785v.1